PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**March 16, 2009**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: <br><br> PACIFIC LIFESTYLE HOMES, INC., <br><br> Debtor. | Case No. 08-45328 |
| PACIFIC LIFESTYLE HOMES, INC., <br><br> Plaintiff, <br> v. <br> BANK OF AMERICA, NA, <br><br> Defendant. | Adversary No. 08-04141 <br><br> **MEMORANDUM DECISION** <br><br> **NOT FOR PUBLICATION** |

THIS MATTER came before the Court on a Motion for Temporary Restraining Order (TRO) filed by Pacific Lifestyle Homes, Inc. (Plaintiff/Debtor). The matter was originally scheduled for hearing on December 3, 2008, and ultimately continued to February 17, 18 and 20, 2009, for an evidentiary hearing. At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. Based on the pleadings, testimony, and evidence presented, the Court's findings of fact and conclusions of law are as follows.

MEMORANDUM DECISION - 1

**I**

**FINDINGS OF FACT**

On or about July 14, 2006, the Plaintiff executed a Borrowing Agreement with Bank of America, N.A. (Bank of America) for a loan in the amount of one million dollars. Kevin Wann (Wann) is the Debtor's president. On or about July 14, 2006, Wann executed an Unconditional Guaranty of Payment and Performance, in which Wann agreed to guarantee the Debtor's performance under the Borrowing Agreement.

The Debtor filed a voluntary Chapter 11 proceeding on October 16, 2008. The Debtor has three primary secured creditors. These creditors have outstanding loans to the Debtor in the approximate amount of 58 million dollars. In addition to the Bank of America guaranty, Wann has also executed unsecured personal guaranties to KeyBank for two million dollars and to West Coast Bank for two million dollars. Wann testified that he also has executed guaranties in excess of two million dollars for outstanding performance bonds, contractor registration bonds, and to selective contractors.

The Debtor is in default under the Borrowing Agreement. On November 20, 2008, Bank of America filed a complaint in the Clark County Superior Court (Superior Court and State Court Action) against Wann and his spouse, Nicki Wann (Mrs. Wann), seeking to collect the one million dollars plus interest owing under the personal guaranty. Bank of America filed a Motion for Order to Show Cause, and the Superior Court entered an Order to Show Cause on November 21, 2008, setting a show cause hearing for December 5, 2008. Bank of America struck the State Court Action show cause hearing pending the outcome of the motions currently before this Court.

The Debtor filed this adversary proceeding on December 1, 2008. On that same date, the Debtor filed a Motion for Order to Show Cause seeking a preliminary injunction (1) prohibiting Bank of America and its agents, servants, employees, attorneys, and those person in active concert or participating with them from undertaking or pursuing any collection efforts against Wann and/or Mrs. Wann, and (2) staying Bank of America's State Court Actions against Wann and/or Mrs. Wann, pending this Court's confirmation of the Debtor's Plan of Reorganization. The Debtor also filed a

MEMORANDUM DECISION - 2

motion for TRO seeking temporary relief until this Court has an opportunity to rule on the Order to Show Cause.

The Court heard the motion for the TRO on December 3, 2008. At that time, the Court continued the matter to December 15, 2008, for an evidentiary hearing with the understanding that Bank of America would not go forward on the State Court Action until this Court ruled on the pending matters. The motion for TRO was combined with the preliminary injunction and was thereafter continued to January 21, 2009, and then to February 17, 2009.

**II**

**CONCLUSIONS OF LAW**

Bank of America does not contest this Court's subject matter jurisdiction to impose the requested relief under 11 U.S.C. § 105[1] of the Bankruptcy Code. Nonetheless, the Court has an independent obligation to assure itself of its jurisdiction. See In re Rosson, 545 F.3d 764, 769 n.5 (9th Cir. 2008). Based on the definition set forth in Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.), 885 F.2d 621, 623-24 (9th Cir. 1989), this Court has subject matter jurisdiction because the requested injunction "could conceivably" affect the administration of the Debtor's bankruptcy estate. It is therefore "related to" a proceeding under Title 11. See 28 U.S.C. §§ 157 and 1334(b).

The proper standard for reviewing a request for injunctive relief under § 105 against a non-debtor is the preliminary injunction standard. Excel Innovations, Inc. v. Solidus Networks, Inc. (In re Excel Innovations, Inc.), 502 F.3d 1086, 1094 (9th Cir. 2007), cert. denied, 128 S. Ct. 2080 (2008). A moving party must show:

> "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff,

---

[1] Unless otherwise indicated, all "Code," Chapter and Section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by BAPCPA, Pub. L. 109-8, 119 Stat. 23, as this case was filed after October 17, 2005, the effective date of most BAPCPA provisions.

MEMORANDUM DECISION - 3

and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.

As we have said many times regarding the two alternative formulations of the preliminary injunction test: These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate test but rather outer reaches of a single continuum."

Excel, 502 F.3d at 1093 (quoting Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005)).

**A.   Strong Likelihood of Success**

"[A] debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization." Excel Innovations, 502 F.3d at 1095. Although the Ninth Circuit Court of Appeals has stated that it is not a high burden to show a reasonable likelihood of success in reorganization, such a finding must be supported by the record. Excel Innovations, 502 F.3d at 1097.

At the evidentiary hearing the Debtor introduced testimony to indicate that it may confirm a successful plan of reorganization, in part, by (1) committing a 1.7 million dollar tax refund owed Wann personally to the Debtor's operations, (2) committing a "significant portion" of his four million dollar 2008 tax refund to the Debtor's operations, and (3) Wann's continuing to focus all of his time and energy on the reorganization of the Debtor. The Court finds Wann's testimony to be credible and that not withstanding the Court's Memorandum Decision and Order Denying Use of Cash Collateral, there is a probability that the Debtor could reorganize, but only with the assistance of time and money by Wann. Denial of the "all or nothing" approach for the use of cash collateral requested by the Debtor does not mean that a more limited use of cash collateral would not lead to a successful reorganization.

Based on the evidence presented, the Debtor has met its burden in establishing a reasonable likelihood of success in reorganization.

### B. Possibility of Irreparable Injury to Debtor

Wann testified that if Bank of America is allowed to collect on the one million dollar guaranty through the State Action, due to the judgment and the costs of litigation, the uncommitted portion of the 1.7 million dollars to be loaned by Wann to the Debtor will not be available. An order was entered on December 9, 2008, authorizing the Debtor to obtain the 1.7 million dollars in postpetition financing from Wann pursuant to § 364. In authorizing the financing, the Debtor demonstrated that it was without sufficient operating capital and was unable to obtain unsecured credit from other sources. See Stipulated Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code and Granting Liens, Security Interests and Super-Priority Administrative Expense Status (Bankruptcy Case No. 08-45328, Docket No. 251). The Debtor has submitted sufficient evidence to conclude that it has no ability to reorganize without the commitment of additional funds.

Wann further testified that it was his belief that if the Court did not grant the TRO, there would be a race to the state court by other banks and entities holding guaranties, in order to collect on his remaining limited assets. Wann would then be forced not only to defend himself in state court while attempting to organize a successful reorganization for the Debtor, but would have to consider the possibility of not committing the proposed tax refunds to the reorganization in order to settle with creditors holding guaranties. The testimony of Wann is found by this Court to be credible.

Bank of America has not identified any significant additional unencumbered assets of Wann, besides the 1.7 million dollars already committed and the expected tax refund of four million dollars, which could be contributed to finance the Debtor's reorganization. The Debtor has demonstrated that it will be unable to continue with its reorganization if the 1.7 or four million dollar tax refunds to be contributed by Wann are not available to it. The Debtor has demonstrated the possibility of irreparable injury if the requested relief is not granted.

### C. Balance of Hardships

In evaluating this factor, a "bankruptcy court must 'identify the harms which a preliminary injunction might cause to defendants and . . . weigh these against plaintiff's threatened injury." Excel

Innovations, 502 F.3d at 1097 (quoting Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 676 (9th Cir. 1988)).

Bank of America has failed to identify any real harm to it in granting the TRO. Although it will be unable to continue collection actions on the one million dollar guaranty against Wann's personal funds, it can pursue its secured claim of approximately $21.7 million in the Debtor's bankruptcy. Further, if the relief requested was not granted, other creditors holding personal guaranties would commence similar state court actions causing Bank of America to share in any recovery. Weighed against the fact that the Debtor has no ability to reorganize if the relief is not granted, the Debtor has established that the balance of hardships weighs in its favor.

**D.     Public Interest**

This is not a case where public interest concerns are paramount. However, the Court agrees that the public interest is furthered in the bankruptcy context by promoting a successful reorganization. See Lazarus Burman Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assocs.), 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993). Certainly there is an interest in keeping the Debtor, who employs over 20 employees and who provides work for countless contractors, in business. As stated above, it is necessary to grant the relief requested in order for the Debtor to continue with the reorganization process.

Based on the above, the Court concludes that the Debtor has established that a preliminary injunction against Bank of America is warranted in this case. At such time as it appears that the reorganization of the Debtor is not likely, Bank of America may apply to this Court to dissolve the injunction.

DATED:     March 16, 2009

_____
Paul B. Snyder
U.S. Bankruptcy Judge